UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RAFAEL BEAN,

Plaintiff,

v.

Case No. 2:04-cv-230
HON. R. ALLAN EDGAR

SANDRA MONROE, et al.,

Defendants.
______________________________/

**REPORT AND RECOMMENDATION**

Plaintiff Rafael Bean, an inmate currently confined at the Standish Maximum Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections. Specifically, defendants include Registered Nurse Sandra Monroe, Sergeant Costello, Sergeant Rohr, Corrections Officer Stimec, Resident Unit Officer Sharrett, Case Manager Robert Johnson, and Sergeant Harris, all of whom are employed at the Alger Maximum Correctional Facility in Munising, Michigan.

Plaintiff's amended complaint alleges that on October 4, 2002, defendant Monroe walked past plaintiff's cell without offering plaintiff his high blood pressure medication despite plaintiff's attempts to get his medication from defendant. Plaintiff asserts that defendant Monroe has a history of denying prisoners needed medication. Plaintiff claims that since a major misconduct for sexual misconduct against plaintiff was dismissed, he has had trouble getting medication from defendant Monroe. Plaintiff claims that on October 26, 2002, he "had to get emergency medical assistance because of shocking rectum pain." Plaintiff explains that this was the first time that he

had experienced such discomfort. Plaintiff asserts that he was denied medication 103 times between February 5, 2002, and April 25, 2003.

Plaintiff was on top of bed restriction on October 27, 2002, while on observation status because of an apparent suicide attempt. Plaintiff asserts that Resident Unit Officer Bradley fabricated misconduct tickets against him. As a result, unidentified officers entered plaintiff's cell with chemical agents and strapped plaintiff to a cement slab without a mattress or blanket. Plaintiff alleges that someone in the maintenance closet blew cold air into the cell by opening an outside vent. Plaintiff claims that he was chained down for 10 hours while he was wearing only a gown, and that he did not receive a mattress for 27 days.

On October 30, 2002, plaintiff alleges that when he was taken off observation status, defendants Rohr and Stemmic returned plaintiff's property bag with missing items. Plaintiff's coats, pajamas, legal material, other clothing and personal items were missing. Plaintiff never received a contraband removal or pack-up property slip for the items. Plaintiff claims that defendants Rohr and Stemmic lost his property, because defendant Rohr was responsible for staff who packed plaintiff's property. Plaintiff claims that his duffle bag was left open in retaliation for plaintiff's emergency medical problem on October 26, 2002, and that he was deprived of his property due to the failure of staff to seal his duffle bag.

Plaintiff asserts that defendant Sharrett refused to process plaintiff's quartermaster request form for a replacement winter coat. Plaintiff alleges that he was denied a coat in retaliation and through deliberate indifference. As a result, plaintiff asserts that he could not go outside without a coat for the daily one hour yard break. Plaintiff states that he never received a coat. Plaintiff claims that he received legal copies late, on April 18, 2003, concerning a judicial review and that it

was defendant Case Manager Robert Johnson's fault. Plaintiff asserts that his petition for judicial review was denied.

Plaintiff claims that on April 28, 2003, he was removed from his cell during a shakedown initiated by defendant Sharrett. Plaintiff was placed in a shower stall. Plaintiff alleges that defendant Sharrett pulled the tether strap to the restraints and tied them to the shower door. Plaintiff asserts that defendant Sharrett claimed that plaintiff had assaulted defendant. Plaintiff claims excessive force was used against him. Plaintiff claims that the move team thought that plaintiff was trying to hang himself in the shower, but plaintiff complains that it was not possible for him to harm himself because he was in restraints. Plaintiff claims that he was punched in the face and body. His clothes were ripped off his body and he was searched roughly. Plaintiff was then transported to an observation cell and chained to the bed. As a result, plaintiff claims that his "wrist, forearm, and sides of my head to suffer damage with a fracture. I suffered extreme pain for weeks with nerve damage from wrist up to my elbow on the right side."

Presently before the Court is defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and/or Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and

admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants assert that plaintiff has failed to show that he exhausted each claim asserted in the complaint against each defendant. Defendant Monroe claims that plaintiff failed to grieve the October 26, 2002, incident regarding plaintiff's "rectum pain," and hemorrhoids. A fair reading of plaintiff's complaint, however, shows that plaintiff is not asserting a separate claim for the October 26, 2002, incident, but is using the incident as evidence of how the deprivation of his high blood pressure medicine caused him harm. Similarly, defendant Johnson claims that he was not named in a Step I or Step II grievance. Defendant Johnson was specifically named in a Step III grievance. In the Step I grievance, plaintiff stated "someone deliberately withheld my copies." In the Step II grievance, plaintiff simply referred to involved staff. In order to properly exhaust Michigan Department of Corrections grievance procedures, a prisoner must raise each of his claims

for the first time at Step I. *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003). However, where a prisoner has set forth a claim in his Step I grievance, he may present additional factual detail at Steps II and III that clarify his allegations at Step I as a means of justifying his appeal. *Id.* Raising allegations against a particular defendant for the first time at Step II or III is insufficient to demonstrate exhaustion. *Id.* at 576 n.4. The circumstances of this case present a close question on exhaustion. Since it is arguable that plaintiff did not know specifically that defendant Johnson was the individual who allegedly withheld his legal documents when plaintiff filed the Step I grievance, but became aware of defendant Johnson's specific involvement by the time he filed his Step III grievance, it is recommended that the court conclude that plaintiff has exhausted his grievance remedies. However, it does not appear that plaintiff can support any of his claims on the merits.

Plaintiff has asserted that defendant Monroe denied plaintiff his blood pressure medication on October 4, 2002. Defendant Monroe explained that she did not give plaintiff his blood pressure medication because when she went to plaintiff's cell, plaintiff was masturbating. Plaintiff's prison records document numerous occasions where his medication could not be delivered because he was masturbating at the time a nurse was dispensing the medication. Defendant Monroe has established that she did not violate plaintiff's rights by failing to provide plaintiff with blood pressure medication while plaintiff was masturbating.

Moreover, plaintiff was issued a misconduct ticket and found guilty of the misconduct. As a result, he lost good-time credits which affects the duration of his confinement. The Supreme Court has held that a claim for declaratory and injunctive relief, as well as for monetary damages, based upon allegations that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994),

which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid*, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original).

The Supreme Court recently revisited this issue in *Wilkinson v. Dotson*, 125 S. Ct. 1242 (2005), a case in which the plaintiffs claimed that the retroactive application of parole guidelines violated the Constitution's *Ex Post Facto* and Due Process Clauses. The plaintiffs sought a new parole eligibility review and a new parole hearing in accordance with the correct guidelines. 2005 WL 516415 at *2. In *Wilkinson*, the Court discussed the effect of its decisions in *Heck* and *Edwards*, as well as *Preiser v. Rodriguez*, 411 U.S. 475 (1973), and *Wolff v. McDonnell*, 418 U.S. 539 (1974), on the issue:

> Throughout the legal journey from *Preiser* to *Balisok*, the Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement – either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody. Thus, *Preiser* found an implied exception to § 1983's coverage where the claim seeks – not where it simply "relates to" – "core" habeas corpus relief, *i.e.*, where a state prisoner requests present or future release. Cf. *post*, at ----5 (KENNEDY, J., dissenting) (arguing that *Preiser* covers challenges that "relate ... to" the duration of confinement). *Wolff* makes clear that § 1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner. *Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence. And *Balisok*, like *Wolff*, demonstrates that habeas remedies do not displace § 1983 actions where success in the civil rights suit would not necessarily vitiate the legality of not previously invalidated) state confinement. These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state

> conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson*, 2005 WL 516415 at *5. The Court then concluded that because the plaintiffs' claims did not necessarily imply the invalidity of their convictions or sentences, they could present these claims in the context of a § 1983 action. *Id.* Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983. *Edwards*, 520 U.S. at 646.

In *Muhammad v. Close*, 124 S. Ct. 1303 (2004), the Supreme Court clarified that *Edwards* requires the favorable termination of a disciplinary proceeding before a civil rights action may be filed only in cases where the duration of the prisoner's sentence is affected. *See Johnson v. Coolman*, No. 03-1909, 2004 WL 1367271, at *1 (6th Cir. June 15, 2004). In other words, *Edwards* still applies where a plaintiff has lost good time as the result of the misconduct conviction. Under Michigan law, a prisoner loses good time credits for the month of his major misconduct disciplinary conviction. *See* MICH. COMP. LAWS § 800.33. In addition, the warden may order forfeiture of previously accumulated credits in cases. *Id.* Plaintiff forfeited good time credit for the month of his conviction. Accordingly, Plaintiff's claim remains noncognizable under § 1983 because a ruling on the claim would, if established, necessarily imply the invalidity of his disciplinary conviction. *See Shavers v. Stapleton*, No. 03-2210, 2004 WL 1303359, at *1 (6th Cir. June 9, 2004).

Under Michigan law, a prisoner may seek a rehearing of a decision made by the Hearings Division within thirty calendar days after a copy of the Misconduct Report is received. MICH. COMP. LAWS § 791.254; Policy Directive 03.03.105, ¶ DDD. Upon denial of his motion for rehearing, a prisoner may file an application for leave to appeal in the state circuit court. *See* MICH. COMP. LAWS § 791.255(2); Policy Directive 03.03.105, ¶ GGG (concerning appeal). If he is not

successful, he may then seek to overturn the convictions by bringing a federal habeas corpus action.[1] Accordingly, because Plaintiff has not shown that his conviction has been invalidated, his claim is not presently cognizable.

Plaintiff claims that on October 27, 2002, his Eighth Amendment rights were violated when defendant Castello and defendant Rohr had a move team remove plaintiff from his cell and place plaintiff in a cold cell without a mat or proper clothing. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene societies "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged "must result in the denial of 'the minimal civilized measure of life's necessities.'" *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich* , 148 F.3d 596, 600-601 (6th Cir. 1998), *cert. denied*, 119 S. Ct. 1028 (1999). Moreover, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. The federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Prison records indicate that plaintiff made suicidal statements that required his placement in an observation room on October 27, 2002. Plaintiff was issued one suicide gown, two suicide blankets and personal underwear. Observations were made every 15 minutes by staff.

---

[1] A misconduct conviction results in the loss of good-time credits, which is equivalent to a loss of a "shortened prison sentence." *See Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). A challenge to a "shortened prison sentence" is a challenge to the fact or duration of confinement that is properly brought as an action for habeas corpus relief. *See Preiser v. Rodriguez*, 411 U.S. 475 (1973). However, a prisoner must exhaust available state remedies before bringing a habeas corpus action, which would include appealing the conviction through the state courts. *See* 28 U.S.C. § 2254(b)(1).

Plaintiff covered his observation cell window with his mattress and covered his cell camera. As a result, plaintiff was placed on top of bed restraints. An attempt was made to provide plaintiff a suicide observation mat, but plaintiff tried to assault staff who attempted to place the mat. Plaintiff's complaint that he was left in a cold cell without a suicide observation mat fails to rise to the level of an Eighth Amendment violation. Prison staff responded appropriately to plaintiff's disruptive behavior. Plaintiff failed to show that any of the defendants acted with deliberate indifference.

Further, plaintiff has sued defendants Castello and Rohr because they supervise prison staff. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim

requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Accordingly, because plaintiff is clearly suing defendants Castello and Rohr because of their supervisory authority over staff, it is recommended that the court conclude that defendants Castello and Rohr be dismissed for lack of personal involvement.

Plaintiff alleges that his personal property was lost because defendants Stimac and Rohr failed to follow proper prison policy by sealing his duffle bag. Plaintiff claims that defendants deprived him of his property, thereby violating his Fourteenth Amendment due process rights. The Due Process Clause does not prohibit deprivation of property by the state; instead it prohibits such deprivations without *due process of law*. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981), overruled in part on other grounds *Daniels v. Williams*, 474 U.S. 327 (1986).

A plaintiff alleging infringement of property rights must show that the deprivation was caused by action taken pursuant to established state procedures. *Hudson v. Palmer*, 468 U.S.

517, 532 (1984); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-436 (1982). Plaintiff herein fails to make the required distinction between challenging the "established state procedure" itself and the failure of the state employee to follow that procedure. *Id.* If the official performing the state procedure fails to follow the state procedure or conform his conduct to state law, the plaintiff's injury is the result of a "random and unauthorized act" which the state was unable to foresee and thus prevent. In *Parratt*, the Supreme Court held that no procedural due process violation occurs when the deprivation is the result of a "random and unauthorized act," unless the state failed to provide the plaintiff with an "adequate post-deprivation remedy."

> Application of the principles recited above to this case leads us to conclude the respondent has not alleged a violation of the Due Process Clause of the Fourteenth Amendment. Although he has been deprived of property under color of state law, the deprivation did not occur as a result of some established state procedure. Indeed, the deprivation occurred as a result of the unauthorized failure of agents of the state to follow established state procedure. There is no contention that the procedures themselves are inadequate nor is there any contention that it was practicable for the State to provide a predeprivation hearing. Moreover, the State of Nebraska has provided respondent with the means by which he can receive redress for the deprivation.

*Parratt*, 451 U.S. at 543.

The Sixth Circuit has held that in procedural due process claims brought pursuant to 42 U.S.C. § 1983, the "Parratt doctrine" allows dismissal where the state provides an adequate postdeprivation remedy if:

> 1) the deprivation was unpredictable or "random"; 2) predeprivation process was impossible or impracticable; and 3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty.

*Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416-417 (6th Cir. 1996). In cases where these conditions are present, "a procedural due process

claim will not be stated unless the plaintiff pleads and proves that his available state remedies are inadequate to redress the wrong." *Copeland*, 57 F.3d at 479; *Pilgrim*, 92 F.3d at 417.

Plaintiff in this case has not demonstrated the absence of adequate state remedies for defendants' alleged misconduct. Plaintiff allegedly filed a grievance regarding defendants' behavior. In addition, plaintiff had a right to pursue a claim through the Prisoner Benefit Fund per Policy Directive 04.02.110 for reimbursement of his lost property. Prisoners may also pursue claims of up to $1,000 through the State Administrative Board, or through the courts if over $1,000. See Policy Directive 04.07.112. The fact that the remedies provided by the state do not provide all the relief which may be available under 42 U.S.C. § 1983 does not mean that the state remedies are ineffective. *Parratt*, 544 U.S. at 544. Therefore, pursuant to *Parratt*, plaintiff's due process claims should be dismissed.

Plaintiff alleges that defendant Sharrett refused to process plaintiff's Quartermaster request for a winter coat. Plaintiff alleges that this was done in retaliation for having an emergency medical problem. Plaintiff fails to set forth any facts which could support a retaliation claim. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 *1037 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001)

(citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Plaintiff has failed to show that he engaged in protected conduct which could support a claim of retaliation.

Plaintiff claims that his failure to get a coat violated his Eighth Amendment rights. Clearly, the failure to receive a coat, itself, cannot support a claim of a violation of the Eighth Amendment. Plaintiff claims that he could not go outside in the cold winter temperatures without a coat, prohibiting him from outside yard time. Defendant Sharrett explains that whenever he went to discuss the situation with plaintiff, plaintiff "would become insolent, refuse to discuss it, or threaten me." In the opinion of the undersigned, plaintiff has failed to show that defendant Sharrett acted with deliberate indifference by not processing plaintiff's quartermaster request.

Plaintiff argues that defendant Johnson returned legal copies to plaintiff late, causing plaintiff's judicial review to be dismissed. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1, 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992), *cert. denied*, 507 U.S. 973 (1993); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal

materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Plaintiff's access to the courts claim is too speculative and nonspecific to state a claim. Plaintiff does not explain what case was dismissed, why he needed copies to support his claim, or specifically how defendant Johnson caused the delay. Moreover, the delay between when plaintiff provided his materials for copying and when he actually received the copies was only five days. Plaintiff claims that he had an April 18, 2003, deadline, but he waited until April 14, 2003, to give defendant a disbursement to send to the law librarian for photocopies. Plaintiff argues that the delay occurred when he did not receive the photocopies on April 15, 2003, the date they were allegedly ready. Plaintiff, clearly, failed to support an access to the courts claim.

Plaintiff argues that excessive force was used against him on April 28, 2003, while he was removed from his cell for a shakedown. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes*, 452 U.S. at 345-46; *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Plaintiff's claim involving the use of force must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g., Whitley*, 475 U.S. at 321-22.

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at * 1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995).

The move team was requested because plaintiff was threatening staff by swinging his restraints. Plaintiff was also attempting to hang himself in the shower stall with articles of clothing. As the team entered the shower area, plaintiff was attempting to hang himself with his clothing. Plaintiff had clothing tied around his neck and tied to the shower stall door. The team immediately breached the shower door and began removing the clothing from plaintiff's neck. Plaintiff was placed in restraints and given full suicide precautions. Certainly, some force was necessary and reasonable to remove plaintiff from the shower stall. Plaintiff claims that he suffered injuries as a result of defendants' conduct. Plaintiff has failed to show that he suffered any injuries caused by

excessive or unnecessary force. Plaintiff's claim that defendants fractured his bones is completely unsupported by fact.

Accordingly, it is recommended that Defendants' Motion for Dismissal and/or Summary Judgment (Docket #36) be granted and that this case be dismissed in its entirety.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $255 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: February 8, 2006